United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>DONALD B. HOLDEN, et al.,<br><br>Defendants. | Case No. 5:18-cv-01624-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 51 |

Plaintiff Scott Johnson alleges that Defendants Donald Holden, Elizabeth Holden, and Terra Bella Group, Inc. violated the Americans with Disabilities Act ("ADA"). Having considered the Parties' briefs and having had the benefit of oral argument on October 10, 2019, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Defendants' motion for sanctions.

**I.     BACKGROUND**

**A.  Factual Background**

On May 15, 2018, Plaintiff, a level C-5 quadriplegic, filed a lawsuit against Defendants, who operate a Shell gas station on property located at 3601 El Camino Real, Palo Alto, California. *See* Complaint for Damages and Injunctive Relief ("Compl.") ¶¶ 1–20, Dkt. 1. Plaintiff alleges that he went to the Shell gas station on six occasions and that during these visits the existing van accessible parking spot was blocked. Specifically, Plaintiff contends that Defendants' employees parked their cars in the existing van accessible parking space. *Id.* ¶¶ 24, 28, 35 (alleging that Defendants "do not maintain the parking lot so that parking spaces marked and reserved for

persons with disabilities are available"). Plaintiff also claims that Shell has an insufficient number of disabled parking spaces. *Id.* ¶ 33 (alleging that Shell has "about 33 parking spaces" and so Defendants are required by law to have "two parking spaces marked and reserved for persons with disabilities").

On or around March 31, 2018, when Defendants were served, Mr. Tom Gidlundt, Defendants' authorized representative and the tenant and operator of the subject Shell gas station, immediately informed the employees that they could not block the disabled parking space. Defendant Terra Bella Group Inc. Declaration of Tom Gidlundt ("Gidlundt Decl.") ¶ 3, Dkt. 55. He also placed orange cones at each of the four corners of the disabled parking space to ensure it was open, available, and usable by the disabled. *Id.* Further, Mr. Gidlundt wrote a policy and practice manual for the owners, managers, and employees of the station that stated Defendants would provide reasonable accommodations to the disabled so long as it would not fundamentally alter business. *Id.*; *see also id.*, Ex. A. Mr. Gidlundt also installed a "tow away" sign at the parking space to warn that illegally parked vehicles would be towed. *Id.* ¶ 3.

Defendants also retained Mr. Blackseth, a Certified Access Specialist Property Inspector ("CASp"), to (1) ensure that the alleged barriers identified in Plaintiff's complaint no longer existed and (2) make other ADA improvements that were not alleged by Plaintiff. *Id.* ¶¶ 6–8. Mr. Blackseth conducted a site inspection and found that no further ADA action was required with respect to Plaintiff's allegations of barriers. CASp Kim Blackseth Declaration ("Blackseth Decl.") ¶ 5, Dkt. 55-1; *see also id.*, Ex. A.

Finally, after the Complaint was filed, Mr. Gidlundt adopted two new policies and checklists:

1. The store manager must complete a checklist at the start of his shift and during his shift to confirm that no unauthorized cars are parked or blocking the ADA van accessible parking space. Reply Declaration of Thomas Gidlundt ("Gidlundt Reply Decl.") ¶ 2, Dkt. 58-2 (a copy of these forms appear at Ex. A).

2. The manager must also fill in the ADA Parking Space Shift log, which identifies the month and day and requires the manager to indicate if the parking space and walkway are clear by marking "yes" or no." *Id.* If the manager marks "no," then the manager must find the driver who must then move the vehicle or the manager must call the towing company. *Id.* If the handicap spot is illegally blocked, the manager must fill out an Unauthorized Parking Report so that when Mr. Gidlundt reviews the logs, he can determine if there is a driver that continuously blocks the handicap spot. *Id.* ¶ 3. If a driver repeatedly parks in the handicap spot, Mr. Gidlundt will fine the driver. And, if repeated violations occur, Mr. Gidlundt plans to place cones around the handicap spot to ensure handicap access. *Id.*

Mr. Gidlundt also signed a contract with CASp Kelly Bray to complete bi-annual inspections for the next three years or more to ensure that the Shell station is ADA-compliant. *Id.*; *see also id.*, Ex. B.

### B. Procedural History

On May 20, 2019, Defendants filed a motion for summary judgment, which includes a request for the Court to sanction Plaintiff. Defendant Terra Bella Group's Motion for Summary Judgment/Partial Summary Judgment to Dismiss ADA Claim, Decline Supplemental Jurisdiction and Request for Sanctions Per the Court's Inherent Authority ("Mot."), Dkt. 51. Plaintiff filed his response on June 2, 2019. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Opp."), Dkt. 57. On June 7, 2019, Defendants filed their reply. Defendants' Reply to Plaintiff's Opposition ("Reply"), Dkt. 58.

The Court held a hearing on October 10, 2019. *See* Dkt. 67. During this hearing, the Parties communicated to the Court that while a Joint Site Inspection occurred, the Parties still disputed the number of parking spaces in the Shell parking lot. The Court ordered Plaintiff's counsel to determine number of parking spaces and file a sworn statement attesting to the number of parking spaces. *See* Dkt. 68. On November 1, 2019, Plaintiff's investigator filed a declaration stating that there are only 12 parking spaces at the Shell station. *See* Declaration of Hedal Kadric

("Kadric Decl.") ¶ 4, Dkt. 68.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

A court must grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to satisfy this burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id.*

If the moving party meets its burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, Rule 56(c) mandates the moving party win the motion for summary judgment. *See id.*

### B. Dismissal Under Federal Rule of Civil Procedure 12(b)(1)

To contest a plaintiff's showing of subject-matter jurisdiction, a defendant may file a Rule 12(b)(1) motion. Fed. R. Civ. P. 12(b)(1). A defendant may either challenge jurisdiction "facially" by arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic evidence (affidavits, etc.) demonstrating the lack of jurisdiction on the facts of the case. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### C. Sanctions

Federal courts have inherent powers; the most prominent of which is the contempt sanction, which a judge may use to maintain "the authority and dignity of the court." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (quotation marks and citation omitted); *see also*

Case No.: 5:18-cv-01624-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING MOTION FOR SANCTIONS

4

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962))). These powers include "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186. The Ninth Circuit has held that a specific finding of "bad faith" is required before a district court imposes sanctions under its inherent authority. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) ("[T]he district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct.").

Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion. *Roadway Express, Inc.*, 447 U.S. at 764. "There are ample grounds for recognizing, however, that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." *Id.* at 765. Indeed, the "assessment of attorney's fees" to reimburse legal fees and costs by the other side is proper if the opposing party has acted in bad faith. *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186.

### III. DISCUSSION

#### A. Motion for Summary Judgment/Mootness

Plaintiff makes two claims in his Complaint:[1]

1. He alleges that while there is a van parking space reserved for persons with disabilities, this spot was routinely obstructed and Shell employees regularly parked vehicles

---

[1] In his Opposition, Plaintiff makes a number of arguments about encountering a slope problem, a path of travel problem, and a striping barrier problem. *See* Opp. at 8. These barriers were not alleged in Plaintiff's Complaint. An ADA plaintiff may seek an injunction to correct other, "unencountered" barriers. *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 952 (9th Cir. 2011). At the summary judgment stage, however, there must be some evidence that other barriers exist. Plaintiff provides *no such evidence*, other than summarily stating in his opposition that there are issues with the slope of the disabled parking, the parking striping, the access aisle, and the path of travel. This is insufficient.

Case No.: 5:18-cv-01624-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING MOTION FOR SANCTIONS

5

|   |   |
|---|---|
| 1 | without handicap plates or a placard in the handicap stalls. Compl. ¶¶ 25, 28. |
| 2 | 2. He alleges that there are not enough parking spaces marked and reserved for persons |
| 3 | with disabilities. *Id.* ¶¶ 32, 33. |

Defendants argue that Plaintiff's first claim is moot and brings a facial challenge to show the claim is moot. Defendants also argue that the second claim lacks a legal basis.[2] *See* Mot. at 4–5. The Court agrees. Regarding Plaintiff's second claim, there is no dispute between the Parties that this was claimed in error. *See* Dkt. 70 (alleging that the Shell station in fact had only 12 spots). Because there are only 12 parking spots, only one handicap spot is required, which Defendants have. This claim is thus no longer in issue.

Regarding Plaintiff's first claim, the Court holds that this claim is moot. A claimed remedy might become moot if "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000); *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). Mootness is raised under Rule 12(b)(1). *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). The inability to review moot cases derives from Article III's requirement that a "case or controversy" exist between the parties. *Id.* at 316. While a defendant's voluntary cessation of allegedly wrongful conduct is unlikely to moot a case, it is possible for a defendant's voluntary cessation to moot a case. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). A defendant claiming its voluntary compliance moots a case bears the formidable burden of showing

---

[2] Plaintiff argues that the motion for summary judgment is premature and requests that the Court stay its decision until after Plaintiff is able to inspect the property, evaluate any remediation efforts, and then submit a supplemental response to the defense's motion for summary judgment. Opp. at 2. Pursuant to the Court's October 2019 order, Plaintiff inspected the property on October 31, 2019 and submitted a supplemental response. *See* Dkt. 69, 70. Thus, Plaintiff was able to inspect the property and submit supplemental information. Plaintiff's argument that the motion is premature is obviated.

Case No.: 5:18-cv-01624-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING MOTION FOR SANCTIONS

6

the wrongful conduct will not recur. *Friends of the Earth, Inc.*, 528 U.S. at 189.

There is no dispute in this case that Shell has an ADA compliant parking space. In other words, the spot itself has no ADA problems. The ADA issue arises from the spot being obstructed by non-handicapped persons. As noted, Mr. Gidlundt has implemented significant protocols to ensure ADA compliance. *See supra* I.A. These include installation of a tow-away sign that now informs violators their vehicles will be towed and Shell managers must fill out an ADA Parking Space Shift log twice during their shifts to ensure the handicap spot is not obstructed. Reply Gidlundt Decl. ¶ 2. Moreover, the Shell station will have bi-annual inspections by a CASp inspector to ensure it meets ADA standards. It is thus uncontested that Defendants have voluntarily remedied all alleged barriers. This, renders Plaintiff's claim moot—vehicles no longer obstruct the handicap spot.

In response, Plaintiff argues that his ADA claim is not moot due to the voluntary cessation doctrine. Under this doctrine, when a defendant's voluntary cessation of a challenged activity is the basis for mootness, "it becomes the defendant's burden to demonstrate that 'subsequent events made it absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur.'" *Moore v. Dollar Tree Stores, Inc.*, 85 F. Supp. 3d 1176, 1187 (E.D. Cal. 2015) (quoting *Friends of the Earth*, 528 U.S. at 189). In the context of ADA claims, "[c]ourts have held that where structural modifications are made, [] it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur in the future." *Moore v. Saniefar*, 2017 WL 1179407, at *6 (E.D. Cal. Mar. 29, 2017) (citation and quotation marks omitted) (first alteration in original). When considering non-structural features, courts have found that "voluntary remediation" of violations do "not moot an issue" because the violations "could easily reoccur." *Id.* To determine if the facts indicate a danger of future violations, courts consider the "bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Watanabe v. Home Depot USA, Inc.*, 2003 WL 24272650, at *4 (C.D. Cal. July 14, 2003) (citation omitted); *see also Langer v. G.W. Props., L.P.*, 2016 WL

3419299, at *4 (S.D. Cal. June 21, 2016) ("When determining whether behavior can reasonably be expected to recur, courts consider various issues, such as the (a) motivation behind the conduct, (b) reasons for the change in conduct, (c) volitional nature of the conduct, (d) length of time between the change in conduct and the complaint, and (e) ownership status of the defendant in relation to the property."); *Lozano v. C.A. Martinez Family Ltd. P'ship*, 129 F. Supp. 3d 967, 972 (S.D. Cal. 2015) ("[W]hether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit is relevant . . . .") (citation and quotation marks omitted) (alteration in original)).

Defendants have met their burden—the pertinent considerations weigh in favor of finding that the violations, even though they pertain to non-structural issues, are not reasonably likely to recur. While courts take a broad view of constitutional standing in disability access cases, the ADA's reach is "not unlimited." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Here, Defendants immediately remedied the alleged violations after the initiation of the action. Gidlundt Decl. ¶ 3. Additionally, Defendants have taken substantial affirmative steps to become compliant and prevent future violations. Upon receiving the Complaint, Defendants hired a CASp to review the site and ensure that Shell fully complied with the ADA. Defendants also took steps to prevent future violations by entering into a three-year contract with a CASp to assess the property on a bi-annual basis for compliance. Reply Gidlundt Decl. ¶ 3; *see also id.*, Ex. A. These affirmative steps indicate that the violations are not reasonably likely to recur. *See Moore*, 2017 WL 1179407, at *7; *see also Turner v. Anand*, 2015 WL 4474671, at *7 (S.D. Cal. July 21, 2015) (finding that the violations, including those pertaining to non-structural issues, could not "reasonably be expected to recur" and dismissing the plaintiff's ADA claim where the defendants "did not have a history of violating" the ADA and the defendants created a policy that "call[ed] for an annual inspection" to ensure ADA compliance).

Defendants have no history of violating the ADA. *Cf. Lozano*, 129 F. Supp. 3d at 971 (noting the defendants' history of ADA noncompliance). Plaintiff also has not directed the Court

to any evidence indicating an intent by Defendants to violate the ADA in the future. The dearth of evidence showing past ADA violations or an intent to violate in the future indicates that future violations are not reasonably likely to occur. *Cf. Clavo v. Zarrabian*, 2004 WL 3709049, at *4 (C.D. Cal. May 17, 2004) (holding that the plaintiff's ADA claim was not moot where the defendants had "an entrenched policy of blocking access to" a "wheelchair accessible gate and check-out aisle" and the defendants "failed to change that policy until after th[e] case was filed"); *Watanabe*, 2003 WL 24272650, at *4 (finding that the plaintiff's ADA claim was not moot where the defendant did not change their policies and procedures to prevent future ADA violations and there was no indication that the defendant intended to comply with ADA).

For these reasons, the Court holds that Defendants have met their heavy burden of showing that it is absolutely clear that the alleged wrongful behavior is not reasonably likely to recur. The voluntary cessation exception to mootness is thus inapplicable to Plaintiff's first claim and the claim is moot. Accordingly, Defendants' motion for summary judgment is **GRANTED.**

**B. Sanctions**

Defendants request for the Court to sanction Plaintiff for the costs associated with bringing the motion for summary judgment. Mot. at 6–7. Plaintiff does not respond to the request for sanctions. *See generally* Opp.

As demonstrated above, mootness is a complicated, multi-factored inquiry. There is no dispute that Defendants initially violated the ADA by allowing non-handicapped persons to obstruct handicap spots. While Defendants undertook significant efforts to remediate this violation, this Court could have found that the claim was not moot. *See supra* III.A (weighing the various factors). The Court thus does not find that Plaintiff maintained this action in "bad faith."[3] *See Christian*, 286 F.3d at 1131. Accordingly, the request for sanction is **DENIED.**

---

[3] While the Court may have considered sanctions as to Plaintiff with respect to its parking number spaces claim, Defendants provide no declaration, affidavit, etc. indicating how much money or expenses they exerted in defending against this claim. The Court thus declines to exercise its inherent sanction powers.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Defendants' request for sanctions. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining Unruh Act Claim and dismisses Plaintiff's state law claim without prejudice. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 18, 2020

EDWARD J. DAVILA
United States District Judge